UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL RECOVERY | § | |
| SERVICE, INC. | § | |
| *Appellant*, | § | CIVIL ACTION H-09-2482 |
| | § | |
| v. | § | (On Appeal from the United States |
| | § | Bankruptcy Court for the Southern District |
| PAMELA GALE JOHNSON, | § | of Texas, Case No. 98-37345) |
| CHAPTER 7 TRUSTEE, | § | |
| *Appellee*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is appellant's appeal of an Order Allowing Claim by a bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). Dkt. 1. After considering the parties' arguments and the applicable law, the bankruptcy court's Order Allowing Claim is AFFIRMED.

**BACKGROUND**

**1.      Statement of Facts**

Hara Kountaki a/k/a Hara's Exxon, filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701–728, on July 14, 1998 (Bankr. Case No. 98-37345). Dkt. 8 at 7. The appellee, Pamela Johnson ("Trustee"), was appointed Trustee and closed the case January 4, 2001 after filing a "no-asset" report on December 29, 2000. Dkt. 8 at 7. In 2004, the appellant, National Recovery Service, Inc. ("NRS") contacted the appellee with news that the estate of Hara Kountaki a/k/a Hara's Exxon may be entitled to a settlement in a pending lawsuit. Dkt. 8 at 8. Thereafter, an agreement was made between NRS and Pamela Johnson to conditionally employ NRS. Dkt. 8 at 8. The agreement reflected the fact that Pamela Johnson no longer had any authority to act on behalf of Hara Kountaki's estate. Dkt. 8 at 8. Ms. Johnson noted on the proposed

contingency fee agreement with NRS that neither she, nor the estate, would be liable to pay NRS until three conditions precedent were performed: (1) the bankruptcy court re-opened the chapter 7 bankruptcy of Hara Kountaki, (2) the bankruptcy court authorized the retention of NRS, and (3) the bankruptcy court issued an order authorizing and approving the payment. Bankr. Dkt. 54 at 2. Three years after the agreement with NRS was made, the Trustee learned about the Florida class action suit against Exxon from a third party. Dkt. 8. at 9. Ms. Johnson filed a motion with the court to re-open the bankruptcy case based upon this information in August of 2007, over a year before any distributions were deposited into the estate. Bankr. Dkt. 21. The Trustee retained independent counsel to file all of the necessary claims and to correct the mistakes made by NRS. Dkt. 8 at 9. In December, 2009, the Trustee received her first distribution from the claim. Dkt. 8 at 9. Shortly thereafter, NRS filed its Application for Allowance and Payment of Administrative Claim ("Application"). Bankr. Dkt.52. Both the Trustee and Hara Kountaki filed Objections with the court concerning NRS's Application. Bankr. Dkt. 61, 63. A hearing was held, where the court granted NRS's Application for Administrative Claim, but only awarded NRS $3,500.00 instead of one third of the total amount recovered, as it held that the contract agreement between NRS and the Trustee was not enforceable. Bankr. Dkt. 70, 81 at 72. NRS now appeals this order.

## ANALYSIS

**1.    Legal Standard**

A district court has jurisdiction over a bankruptcy appeal under 28 U.S.C. § 158(a)(1), and in reviewing the findings of a bankruptcy court, a district court acts in an appellate capacity. *See Perry v. Dearing*, 345 F.3d 303, 308–09 (5th Cir. 2003). The burden is on the appellant to show that a finding of fact made by a bankruptcy court is clearly in error. *See Perry*, 345 F.3d at 309; *Butler*

*Aviation Int'l, Inc. v. Whyte*, 6 F.3d 1119, 1127–28 (5th Cir. 1993); *see also* FED. R. BANKR. P. 8013 ("Findings of fact . . . shall not be set aside unless clearly erroneous . . . ."). A finding of fact is clearly erroneous when, even in the presence of evidence to support it, the reviewing court is left with a "definite and firm conviction" that the bankruptcy court has made an error. *See Carol v. Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005). A bankruptcy court's conclusions of law are reviewed *de novo*. *See Perry*, 345 F.3d at 309; *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 928 (5th Cir. 1999).

**2.     Application**

NRS asserts that the bankruptcy court improperly held that the contingency fee contract between NRS and Pamela Johnson required prior court approval to be valid. NRS advances two primary reasons to support its claim. First, NRS believes itself to be a non-professional person, and therefore not subject to the requirements under 11 U.S.C. § 327 (requiring prior court approval for professional persons). Second, NRS claims that because the Trustee was the person obligated to obtain the court's approval under the written contract, she cannot therefore rely on her own failure to perform a condition precedent to evade her contractual obligations.

In response, the Trustee argues that the contract is invalid for two reasons. First, the Trustee did not have the authority to bind the estate in August, 2004 when the agreement was made, as she was no longer the Trustee because the case had been closed. Second, the agreement on its face required the approval of the bankruptcy court. Despite any efforts on the part of the Trustee, the court had sole discretion under the contract to approve or disapprove the retention of NRS's services and any payments to be made to NRS.

**1.      Prior Approval for Professional Services**

NRS asserts that it is not a "professional person" under 11 U.S.C. § 327, which provides that a trustee seeking to employ a professional must obtain court approval. However, the bankruptcy court did not rely on 11 U.S.C. § 327 in holding that prior court approval was needed. Instead, the court held that the written contract itself required prior approval.

> In Texas, whether a contract is ambiguous is a question of law. A contract is unambiguous if it can be given a definite or certain legal meaning. On the other hand, if the contract is subject to two or more reasonable interpretations the contract is ambiguous, creating a fact issue on the parties' intent. When parties disagree over the meaning of an unambiguous contract, the intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written. The language in an agreement is to be given its plain grammatical meaning unless to do so would defeat the parties' intent. Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity.

*Addicks Servs. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. Tex. 2010) (internal citations omitted) (internal quotations omitted). The contract was specifically drafted to fit the special circumstances by the Trustee. In particular, the contract provided unambiguously that neither the estate nor Pamela Johnson would be liable for any payments unless three conditions precedent occurred: (1) the bankruptcy court re-opened the chapter 7 bankruptcy of Hara Kountaki, (2) the bankruptcy court authorized the retention of NRS, and (3) the bankruptcy court issued an order authorizing and approving the payment. Bankr. Dkt. 54 at 2. The terms were clear and unambiguous, and therefore the language will be given its plain grammatical meaning. Without the three conditions precedent occurring, neither the estate nor Pamela Johnson were liable for any payments. Because the bankruptcy court did not authorize and approve the payment to NRS, the

condition precedent was not met, and NRS is therefore not entitled to the one third contingency fee specified in the contract.

### 2. Trustee did Fulfill her Obligations

NRS asserts that the Trustee was obligated to obtain court approval, not NRS, and therefore she failed to meet her obligations under the contract. NRS cites to *Canyon Land Park v. Riley*, 575 F.2d 550, 552 (5th Cir. 1978), which holds "[i]t is generally agreed that one who unjustly prevents the performance of the happening of a condition of his own promissory duty thereby eliminates it as such a condition."

Giving the terms their plain grammatical meaning, the contract required the bankruptcy court to approve NRS's contingency fee agreement before it would become binding. Bankr. Dkt. 54. This condition did not rest in the powers of the Trustee, as she did not have the authority to give this approval. While she could have moved the court for approval, she was not obligated to do so. The contract specified that the Trustee would move for the court to re-open the case, which she did. Dkt. 7 at 9.

The hearing on NRS's Application for Allowance and Payment of Administrative Claim gave the court the opportunity to approve the contract, a necessary condition before NRS could be paid. The bankruptcy court had the final authority, and in its discretion did not approve the one third contingency fee in the agreement, but instead awarded NRS a $3,500.00 fee through its equitable powers. This decision was the bankruptcy court's to make, and it did not commit any error in so holding.

## CONCLUSION

Based upon a review of the applicable law, the bankruptcy court did not err in holding that the contingency fee contract entered into by the Trustee and NRS required the prior approval of the court before it was binding. The bankruptcy court's Order Allowing Claim is AFFIRMED.

It is so ORDERED.

Signed at Houston, Texas on July 29, 2010.

_____
Gray H. Miller
United States District Judge